[Sac. No. 1782. In Bank.—May 2, 1911.]

# M. H. DIEPENBROCK, Respondent, v. FRANK J. LUIZ, Appellant.

CONTRACT—CONSTRUCTION—CONDITIONS PRECEDENT. — Stipulations in a contract are not construed as conditions precedent, unless that construction is made necessary by the terms of the contract.

ID.—MEANING OF WORD "PROVIDED."—The word "provided" does not necessarily impose a condition, and the meaning of a clause in a contract in which it occurs is to be construed from the words employed and from the purpose of the parties, gathered from the whole instrument.

ID.—LEASE—SALE BY LESSOR—TERMINATION OF LEASE—PROVISO FOR PAYMENT FOR IMPROVEMENTS.—Where a lease of agricultural lands for five years authorizes the lessor to sell the demised premises at any time during the term, and that whenever sold, the lease shall cease and be at an end, provided that the lessor shall then pay the lessee for the improvements placed upon the premises to the time of the sale, the proviso for such payment is to be construed as a condition to the termination of the lease, and not as a mere covenant, and a sale of the premises by the lessor, without payment to the lessee, does not operate as a termination of the lease, so as to relieve the lessee continuing in the possession of the demised premises, of the obligation to pay for the use thereof. (Per Melvin, J., Sloss, J., and Lorigan, J.)

ID.—WAIVER OF PROVISION FOR TERMINATION OF LEASE.—Such provision for the termination of the lease upon a sale of the premises was solely for the benefit of the lessor, who could waive the benefit thereof, and, without terminating the lease, could sell and convey the premises subject thereto. The grantee, if the lessor did not act in the matter prior to the conveyance, could also waive the right and continue the lease in force. In that case, the lessee would have no right to declare the lease terminated and demand payment for his improvements. (Per Shaw, J., Henshaw, J., and Angellotti, J.)

ID.—LIABILITY FOR RENT AFTER SALE—OFFSET FOR IMPROVEMENTS.— Upon a sale of the demised premises before rent becomes due under the lease, the claim therefor is transferred to the grantee, and he is the proper party to bring an action to recover the same. In such action, the lessee cannot offset the value of the improvements erected on the premises. If there be anything due for such improvements it is from the original lessor.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

J. Frank Brown, and C. E. McLaughlin, for Appellant.

R. Platnauer, for Respondent.

MELVIN, J.—This cause was decided by the district court of appeal of the third appellate district, and a rehearing was granted in order that we might further examine the authorities applicable to the lease involved in the litigation. After careful examination of the authorities cited and of the arguments of counsel presented in their briefs, we have adopted the opinion of the district court of appeal, written by Mr. Justice Burnett, which is as follows:—

"The action, based upon a lease of agricultural lands from one R. W. Brown to defendant, is to recover the rental which under the terms of said lease became due on November 15, 1906. The lease was executed on November 11, 1905, and on November 10, 1906, Brown conveyed the premises together with 'the reversion and reversions, remainder and remainders, rents, issues and profits thereof,' to plaintiff.

"The main controversy is over the proper construction of the following clause in said lease: 'It is agreed by and between the parties hereto, that the party of the first part may sell the demised premises at any time during the said term. Whenever sold this lease shall cease and be at an end, provided that the party of the first part shall then pay to the party of the second part, for all improvements placed upon the demised premises to the time of such sale, including the cost of all ditches, built thereon by the latter and all crops then growing thereon, the value thereof to be agreed upon by the parties hereto, and if they do not agree the value thereof shall be fixed by two disinterested persons selected for that purpose, by the parties hereto, and if they fail to agree by a third person selected by them for that purpose, and a majority of the three shall fix the value of such improvement, and the cost of such ditches, and the value of such crops, and as so fixed shall be paid by the party of the first part to the party of the second part.'

"It is the contention of appellant that the lease was terminated the instant a *bona fide* sale was effected by the lessor,

while respondent claims that the termination was subject to the further condition of payment of the value of the improvements. In other words, the parties differ as to whether the clause providing for said payment constitutes a covenant or a condition. Appellant insists that in harmony with the rule of construction that every word is to be understood in its ordinary and popular sense, we may adopt any of the following definitions of *provided* as given by Webster, to wit: 'On condition'; 'by stipulation'; 'with the understanding.' Substituting these various definitions for *provided* he argues that 'with the understanding' harmonizes perfectly with the text. 'It creates no discord, and does not limit the meaning and effect of that which precedes or succeeds it, much less nullify and render meaningless, important portions of the paragraph in which it is found. On the other hand the substitution of the definition 'upon condition' creates inconsistency, inharmony and discord. It practically eliminates succeeding sentences where careful provision is made for the ascertainment and payment of the amount while its effect on the preceding sentence 'whenever sold this lease shall cease and be at an end' is to convert an absolute, positive and emphatic declaration into a qualified statement, the effect of which depends upon the will of one of the parties jointly making it.'

"It is undoubtedly true, as claimed by appellant, that stipulations in a contract are not construed as conditions precedent unless that construction is made necessary by the terms of the contract. (*Deacon* v. *Blodget,* 111 Cal. 418, [44 Pac. 159]; *Antonelle* v. *Lumber Co.,* 140 Cal. 318, [73 Pac. 966].) There are also well considered cases holding that *provided* does not necessarily impose a condition. In *Hartung* v. *Witte,* 59 Wis. 285, [18 N. W. 177], it is said: 'But the words, "upon the express condition," as here used, or the words "if it shall so happen" or "provided however" and the like do not always make a condition, and it is often a nice question to determine whether it is a condition or a covenant and courts always construe similar clauses in a deed as covenants rather than as conditions, if they can reasonably do so.' (2 Washburn on Real Property, 4.)

"In *Stanley* v. *Colt,* 72 U. S. 119, [18 L. Ed. 502], it is declared that 'The word *provided* though an appropriate word to constitute a common law condition does not invariably and

of necessity do so.  On the contrary, it may give way to the intent of the party as gathered from an examination of the whole instrument, and be taken as expressing a limitation in trust.'

"Similarly in *Woodruff* v. *Woodruff,* 44 N. J. Eq. 353, [16 Atl. 6, 1 L. R. A. 380], it is said: 'While the words "provided nevertheless" and "upon the following conditions" are appropriate words to create a condition, they do not of necessity create such an estate.  They and similar words. will give way when the intention of the grantor as manifested by the whole deed, is otherwise, and they have frequently been explained and applied as expressing simply a covenant or a limitation in trust.'

"Indeed, the decisions are uniform to the point that, while ordinarily the word 'provided' indicates that a condition follows, as expressed in *Boston S. and D.* v. *Thomas,* 59 Kan. 470, [53 Pac. 472], 'there is no magic in the term, and the clause in a contract is to be construed from the words employed and from the purpose of the parties, gathered from the whole instrument.'

"Respondent, on the contrary, quotes from *Rich* v. *Atwater,* 16 Conn. 409; *Robertson* v. *Caw,* 3 Barb. (N. Y.) 410, and *De Vitt* v. *Kaufman Co.,* 27 Tex. Civ. App. 332, [66 S. W. 224], to the effect that the word 'provided' means 'on condition' and is the appropriate word for creating a condition precedent.

"It is admitted by appellant that it is an apt word for that purpose, but he contends that to so interpret it would be against the evident intention of the parties.

"Reflecting, however, that the lease was for the term of five years and that valuable improvements were likely to be made by the lessee and that the lessor wanted to be in a position to avail himself of any favorable opportunity to sell the premises to advantage, what is more reasonable than the conclusion that the lessor desired to retain an option to terminate the lease if the would-be purchaser should demand that the premises be conveyed free from encumbrance?  Of course, it is only in view of such a contingency that there would be any reason for leaving the lessor a choice as to the payment for the improvements.  It would hardly be supposed that he was so generous as to choose to pay unless the exigency of a profitable sale made

it to his advantage to do so. On the other hand, the lessee would hardly be willing to have his valuable leasehold interest destroyed at any time by a sale without at least some protection for his outlay on the property. And he might, quite naturally, desire more security than the mere personal covenant of the lessor to pay him for his improvements. He would, therefore, as a reasonable man, insist that if the lessor is to have the privilege of selling the property at any time and desires thereby to terminate the lease, it must be upon the condition that he pay for the improvements. It would immediately occur to the parties, however, that in case the improvements are to be paid for some question might arise as to their value and for the purpose of determining this the judgment of two—and in case of their disagreement—of three arbitrators, it might be considered expedient to invoke. If the parties had these conditions in mind would they not with sufficient accuracy express their intention by declaring that 'the lessor may sell the demised premises at any time during said term. Whenever sold the lease shall cease and be at an end provided that the party of the first part shall then pay to party of the second part the value of the improvements placed thereon by said party of the second part to be agreed upon by said parties and if they cannot agree, said value to be determined by two disinterested parties and in case of their disagreement a third party shall be selected and a majority of the three shall fix the value of the improvements to be paid by said party of the first part?' This is substantially the language used, and to adopt the construction of appellant, we must depart from the primary meaning of the word *provided* and hold that the parties used it in a secondary sense. The argument of appellant is interesting and ingenious, but it cannot change the fact that, attributing the usual and ordinary signification to the language of the parties, a condition is found in the provision in question. Nor, if we bear in mind the contingency already suggested and implied in the terms employed, does the conclusion of the learned trial judge derogate from the force of the seemingly positive promise to pay for the improvements.

"But accepting appellant's interpretation, how does the case appear? If the lease was terminated by the sale, it was the duty of defendant to surrender the premises. It is indeed so

provided in these words: 'At the end of said term or *early ending of this lease* the party of the second part shall surrender possession of the demised premises in good order and condition.' It is the duty of the lessor to pay for the improvements. The lessor failed to pay and the lessee continued in possession. It is admitted that the lessor's covenant was a personal one, it was not made subject to a lien upon the land, nor upon appellant's theory was the lessee authorized to remain in possession until he was paid for the improvements. The lessee's redress, therefore, for the violation of the lessor's promise is a personal action against the latter for the value of the improvements. The lessee occupied and used the premises to his profit by virtue of no other right than that created by the lease until after the payment of the rent became due—indeed, until the end of the year. It is true that another lease was executed by plaintiff to defendant and his son, but this was on November 17th—two days after said rent was due—and it was not to take effect until December 1st. There can be no doubt, then, that defendant, having occupied the premises for the whole year, was burdened with the obligation to pay for the use thereof. The only question that could arise would be whether he should pay the rent prescribed in the lease or what the use of the premises was reasonably worth. This we need not determine, as, in another view, assuming the termination of the lease by the sale, it would seem that defendant cannot escape the payment of the rent. As already seen, the said sale occurred only five days before the rental was to be paid and less than a month before the expiration of one year of occupancy by said lessee. This fifteen hundred dollars was the balance of the annual rental, and since there was no agreement as to any apportionment or abatement of rent, in the absence of any statutory provision, in case of termination of the lease before the rent was due, the rule would be as stated in section 389 of Taylor's Landlord and Tenant: 'It is well settled that in all cases of periodical payments, accruing at intervals, and not *de die in diem,* there can be no apportionment, for rent will not be apportioned in respect of time, unless by force of a statute or of some special provision of the lease.' But section 1935 of the Civil Code provides the rule in this state as follows: 'When the hiring of a thing is terminated before the time originally agreed upon, the hirer must

CLIX Cal.—46

pay the due proportion of the hire for such use as he has actually made of the thing, unless such use is merely nominal, and of no benefit to him.' As has already appeared, the defendant actually had use of the property for the entire year under the original lease, but if the computation should be limited to the date of the sale it amounts practically to the same thing, and, under the evidence, it cannot be said that the use was merely nominal or of no value to defendant.

"It was rightly held, we think, that the claim for the rent was transferred to plaintiff and therefore he was the proper party to institute the action. Indeed, the evidence shows that defendant did not object to paying the rent to plaintiff but he insisted that he should be reimbursed by the said plaintiff for the value of the improvements. But this cannot be urged as an offset to plaintiff's claim since plaintiff did not undertake to pay therefor. If there be anything due for said improvements it must be from the original lessor.

"The judgment is affirmed."

Sloss, J., and Lorigan, J., concurred.

SHAW, J., concurring.—I concur in the judgment of affirmance and I agree with the conclusion of Justice Burnett that the provision in the lease of 1905, requiring the ending of the term upon a sale of the premises by the lessor, is a condition and not a mere covenant. I do not think, however, that the opinion fully states the grounds upon which the judgment must rest. The provision for the termination of the lease upon a sale of the premises was solely for the benefit of the lessor. (*Foley* v. *Constantino,* 43 Misc. 91, [86 N. Y. Supp. 780].) He could undoubtedly waive the benefit thereof and, without terminating the lease, he could sell and convey the premises subject to the lease. The grantee, if the lessor did not act in the matter prior to the conveyance, could also waive the right and continue the lease in force. In that case the lessee would have no right to declare the lease terminated and demand payment for his improvements. The part of the provision which was for his benefit was that which gave him the right to demand payment for his improvements as a condition concurrent with the exercise by the lessor or his grantee of the option to terminate the lease. If either attempted to exercise

the option, the lessor could demand payment for his improvements and the lease would not terminate until such payment was made. The evidence shows that the grantee, Diepenbrock, refused to pay for the improvements when the sale to him was made. As neither he nor Brown, the original lessor, paid or offered to pay the lessee for the improvements, the right which they had to terminate the lease upon that sale was thereby waived and the lease continued in force unaffected by the sale. The lessee had the right to continue in possession of the premises for the full term of five years. Instead of doing so, however, the lessee voluntarily executed another lease on November 17, 1906, seven days after the sale and two days after the rent in question became due, whereby he and his son became lessees of the premises upon different terms of rent for the period of one year beginning December 1, 1906. This transaction abrogated the previous lease for all that part of the original term subsequent to the beginning of the new lease. But it did not relieve the lessee from the obligation to pay the rent already accrued under the old lease at the time the new lease was made, nor did it preserve to him the right to demand payment for his improvements. The making of this new lease may have been unwise, but there is no claim that it was not voluntarily and intelligently made. The lessee must take the consequences of the condition in which he has voluntarily placed himself and pay the rent accrued under the old lease in accordance with his contract to do so.

Henshaw, J., and Angellotti, J., concurred.