[Civ. No. 2418.     Third Appellate District.—August 8, 1922.]

MANUEL ARMAS, Jr., Respondent, v. FRANK C. ARMAS, Appellant.

[1] LANDLORD AND TENANT — SALE OF PREMISES DURING TERM—RIGHT OF LESSEE TO SURRENDER POSSESSION — CONSTRUCTION OF LEASE.— Where a lease of real property provides that in the event the lessor shall sell and convey said property to anyone other than the lessee during the term of the lease, he shall pay to the lessee at the rate of a specified sum per year for the unexpired term of the lease, "in consideration whereof the lessee shall give up and surrender to the lessor, or his assigns, the real property and appurtenances covered by this lease," and the property is sold during the term of such lease, subject to such agreement of lease, and neither the lessor nor his vendee demands or requires that the lessee shall surrender possession, the lessee may not voluntarily surrender possession of the premises and recover the stipulated sum per year for the unexpired term of the lease, as such covenant is for the benefit of the lessor and a sale of the premises does not *ipso facto* terminate the lessee's right of possession.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Reversed.

The facts are stated in the opinion of the court.

F. W. Henderson for Appellant.

John A. Wall for Respondent.

HART, J.—The parties to this action (brothers), on the twenty-sixth day of December, 1919, entered into a written

---

Contruction of provision in lease as to termination of leasehold at option of one or both parties, notes, Ann. Cas. 1916B, 306; Ann. Cas. 1917E, 523.

agreement of lease, whereby the defendant leased to the plaintiff forty acres of land, situated in what is designated in the lease as ''Rotterdam Colony,'' in Merced County, for the term of five years, for the total rental of $1,250, payable annually in installments of $250, the initial payment of $250 to be made and the same was made on the date of the execution of the lease. Among the covenants or conditions of the lease was the following:

''In the event the lessor shall sell and convey said property to any one other than the lessee during the term of this lease, he shall pay to the lessee at the rate of two hundred and fifty dollars per year for the unexpired term of the lease, in consideration whereof the lessee shall give up and surrender to the lessor, or his assigns, the real property and appurtenances covered by this lease.''

The controversy here revolves around the foregoing provision of the lease.

The complaint alleges that the defendant (lessor), prior to the twenty-second day of September, 1920, and while said agreement of lease was in full force and effect and while the plaintiff was, under the terms of said agreement of lease, in the possession and occupation of the lands therein described, sold and conveyed said land to a person other than the plaintiff; that the latter, on the twenty-second day of September, 1919, surrendered the possession of said real property and appurtenances to the defendant, and thereupon demanded of defendant ''that he pay to plaintiff the sum of $250 per year for the unexpired term of said lease; that is to say, from the 22d day of September, 1920, to the expiration of said agreement of lease, to-wit: December 26, 1924, amounting in the aggregate to the sum of $1,041; that defendant has failed and refused to pay plaintiff the said sum or any part thereof.''

Answering the complaint, the defendant, after certain denials, alleges that the conveyance of the property described in the lease was made subject to said agreement of lease and that the grantee named in the deed of conveyance took said premises by said conveyance from defendant subject to said lease and to the right of the plaintiff to the possession of the premises therein described, and that at no time has the defendant or the grantee in said convey-

ance "demanded or required of plaintiff herein the surrender of said premises or any portion thereof."

The defendant also filed a cross-complaint by which he sought the reformation of the agreement of lease, alleging that the agreement of lease set out in the complaint was made and signed by the parties, but "by mistake of the said parties, which was mutual, and of the person who drew said instrument, the said agreement of lease did not, nor does it, correctly contain and set forth the agreement of the parties with reference to the sale of said premises." Following these averments is the provision of the lease above quoted herein, as to which the cross-complaint proceeds: "That said provision was inserted and made as above set forth by mistake of the person selected by plaintiff and defendant for the drafting of said instrument; that the parties hereto agreed that, in the event that the lessor should sell and convey said property to any one other than the lessee during the term of said lease with the right to the immediate possession thereof, the plaintiff would upon demand of defendant vacate said premises, surrender said lease and that thereupon defendant would pay to plaintiff $1,000.00 for the unexpired term of said lease." It is further alleged that said property was not sold with the right of immediate possession in the grantee or any right of possession prior to the termination of the lease; that neither defendant nor his grantee of said land ever demanded of plaintiff surrender of such possession; that the conveyance of said land was, as the answer alleges, to a person other than plaintiff subject to all the terms, covenants, and conditions of said lease; that, subsequent to the sale by defendant of said land, "without the consent of defendant and of the purchaser from him and contrary to the wishes of each of them, plaintiff vacated said premises and abandoned said lease."

The prayer of the cross-complaint is that the said written lease be so reformed as to "speak the agreement of the parties as herein set forth and that plaintiff take nothing by his action," etc.

The cross-complaint was met by denials.

The court found that the agreement of lease was as it was written and set out in the complaint, and, accordingly, denied the prayer for a reformation thereof; that plaintiff entered into the possession of the said premises under said

agreement of lease on the twenty-sixth day of December, 1919; that defendant, prior to the twenty-second day of September, 1920, sold the land to a person other than the plaintiff, and that the deed of conveyance executed by defendant to the grantee of said land contained a provision that said conveyance was "subject to the lease thereon to Manuel Armas, dated December 28, 1919," but that said provision in said deed of conveyance "was without the consent or knowledge of plaintiff and he refused to recognize it or be bound by it in any way or at all." It was further found that, after the execution by the defendant of said conveyance, to wit, on the twenty-second day of September, 1920, plaintiff vacated and surrendered possession of said premises, and "did then and there demand of defendant that he pay to plaintiff the sum of $250.00 per year for the unexpired term of said lease—that is to say, from the twenty-second day of September, 1920, to the expiration of said agreement, to-wit: December 26th, 1924, amounting to the sum of $1,041.00; that defendant refused to pay plaintiff said sum, or any part or portion thereof, and that the defendant is indebted to the plaintiff in the said sum of $1,041.00, together with interest," etc.

Judgment was awarded accordingly, and the defendant appeals therefrom under the alternative method.

Under the plea by the defendant in his cross-complaint for a reformation of the provision of the instrument stating the contingency upon the happening of which the lessee was to surrender possession of the premises in question prior to the expiration of the term during which the lease was to run the court allowed parol evidence upon the question of the understanding of the parties as to what they intended the lease should actually say in that particular; and in addressing proof to that inquiry some evidence was developed which sustains the finding of the court that the provision referred to, as written in the lease, and *as construed by the plaintiff*, contained the real stipulation of the parties as to the occasion on which the plaintiff would be required to surrender his leasehold interest in the premises and vacate the same. The plaintiff testified that he and the defendant together went to a scrivener in the city of Merced, stated to him the terms of the lease as they appear in the lease which was signed by the parties, and that said

scrivener prepared said instrument accordingly, and that
both he and plaintiff, after reading the instrument, ex-
pressed themselves as being satisfied therewith as so pre-
pared and subscribed their names thereto. The plaintiff in
effect declared that there never was any question as to his
obligation to surrender possession of and vacate the premises
at any time the defendant should sell and convey the prop-
erty during the term of the lease to any person other than
to himself. There was testimony by other witnesses that
defendant stated in their presence, after the lease was
executed, that he was satisfied with the terms of the agree-
ment as it was written. The defendant, however, positively
testified that possession was to be surrendered by the lessee
in case of a sale by the lessor during the term of the
lease only upon demand for possession by the lessor or his
grantee.

If the parol evidence received in this case were required
to be reviewed as to its relation to the question whether
it was or was not sufficient to support the finding upon the
issue of the reformation of the agreement; if, in other
words, there was so pronounced an ambiguity as to the
meaning, as intended by the parties, of said instrument in
the particular as to which the controversy here has arisen
as absolutely to require parol evidence to explain what was
thereby actually meant or intended to be expressed, then we
would perhaps feel compelled to hold, under the rule as to
evidentiary conflicts, that there was sufficient support for
the court's conclusion involving a construction of said pro-
vision. But, in our opinion, it was and is not necessary
to resort to extrinsic aid to get at or understand the true
meaning or at least the legal effect of that part of the
agreement. The provision as to the sale of the premises
during the term of the lease speaks plainly for itself as to
its effect.

[1] The construction given by the trial court of that pro-
vision of the lease is, in effect, that, upon a sale and convey-
ance of the land, as provided in the lease, the right of the
plaintiff to the further possession thereof *ipso facto* ceased,
and that he was then bound to surrender such possession at
once to the purchaser or grantee and the lessor required to
pay him the sum stipulated in the lease. This construction
or the effect thereof would make the provision as to sale

and surrender of possession a personal covenant as between the lessor and lessee and solely for the benefit of the latter. But, be that as it may, the language and the very nature of the provision forbid the construction to which it is subjected by the trial court.

The part of the lease referred to, it will be noted, provides that in the event of a sale and conveyance of the premises by the defendant as therein specified, the lessor "shall pay to the lessee, at the rate of two hundred and fifty dollars per year for the unexpired term of the lease, *in consideration whereof the lessee shall give up and surrender to the lessor, or his assigns*, the real property and appurtenances covered by this lease." It seems to us that, upon the slightest reflection, it must become manifest that what the parties intended to say, and, upon a fair construction of the English language, what really they do and did say, by the use of that language, was that, if the lessor, upon selling the property to a party other than plaintiff while the lease was still in force, failed and refused to pay the lessee the stipulated sum, the latter would not be required to surrender possession of the premises. Or, to put the proposition in a different form of language, it is reasonably certain, if not perfectly clear from the language of the provision, that the understanding between the parties thus intended to be expressed was that the lessee should be required to surrender possession of the premises, upon a sale thereof during the term of the lease to some person other than plaintiff, only upon payment to the plaintiff of the sum stipulated to be paid upon such surrender; and necessarily this would mean, and does mean, that the plaintiff was entitled to remain in possession until such payment was made. In other words, paraphrasing said language according to what clearly appears to be the natural tenor thereof, the provision would read: "That if a sale of the property be made to a party other than lessee during the term of the lease, the lessee agrees to relinquish his right of possession under the lease and surrender possession of the premises provided the lessor pays to the lessee the sum," etc. This is undoubtedly the meaning and effect of the language referred to. It vested the lessee with the unquestionable right to remain in possession after a sale as specified until he was reimbursed as stipulated. With that

provision in the lease, no court would sustain an action by the defendant to oust plaintiff of possession for the purpose of giving possession to a purchaser of the premises during the term of the lease without first requiring defendant or the purchaser to pay plaintiff the sum stipulated so to be paid in the case of such sale. And this proposition was faithfully recognized by the defendant on selling and conveying the premises to his grántee, one Azevedo. Said deed is dated and presumptively was delivered (Civ. Code, sec. 1055) the fifteenth day of September, 1920, little short of nine months after the date of the execution of the lease to plaintiff, and was filed for record in the office of the county recorder of Merced County on the fourth day of October, 1920. The indenture, in the *habendum* clause thereof, among other things, contains the condition, as the court found, that the sale and conveyance of the premises is "subject to a lease thereon to Manuel Armas, dated December 28th [26th?], 1919, and expiring December 26th, 1924." Of course, by this provision or condition in said deed, the grantee of defendant was bound by the terms of the lease. He could not secure possession of the premises until the plaintiff had been, either by the grantor or the grantee, satisfied according to the terms of the provision stipulating for the sale of the property pending the existence of the lease to some person other than himself. In other words, the plaintiff, according to the deed of conveyance, was entitled to continue in possession of the premises under his lease until demand was made by the grantor or grantee of said premises for possession and the payment to him of the sum stipulated in the lease to be paid in the event he was required to surrender such possession during the term of the lease. In truth, the legal effect of said provision in the lease is this: That the plaintiff, by the lease, was granted by the defendant a defeasible estate for years in the demised premises, carved out of the fee which remained in the lessor or (using the common-law term in such a case) the grantor. The latter could not arbitrarily but only upon complying with the condition involved in the defeasance clause of the deed defeat or destroy the estate so vested in the plaintiff. The latter's estate or interest in the fee was, until the happening of the condition for its termination, as impregnable against attack as was the estate

of the defendant or his grantee in the premises in remainder. Indeed, the defendant could not convey absolutely or unconditionally the interest in the land which he had previously taken out of the fee and conveyed to the plaintiff. And it is clear that he did not attempt to do so. As we have seen, in the transaction whereby he sold and conveyed the remainder to Azevedo, he was particular to preserve, by apt words in the deed of conveyance, the estate or leasehold right of the plaintiff. There was no demand made by either the defendant or his grantee that the plaintiff surrender possession and so terminate his lease. This the plaintiff admitted. He testified that he learned of the sale of the property four days prior to the day he abandoned possession of and vacated the premises; that he thereupon called on the defendant and asked him if a sale had been made and that the latter replied that, while a sale had not then been completed, he expected to sell and convey the premises within a short time; that thereafter, and on the twenty-sixth day of September, 1920, wholly upon his own volition or voluntarily, or without having been asked, requested, or required to do so by either the defendant or Azevedo, the purchaser, he vacated and so surrendered possession of the premises.

But, regardless of any other considerations, the case comes squarely within the principles of the case of *Diepenbrock* v. *Luiz,* 159 Cal. 716, 722 [Ann. Cas. 1912C, 1084, L. R. A. 1915C, 234, 115 Pac. 743], and particularly within the rule as it is declared in the concurring opinion of Mr. Justice Shaw (now chief justice) and concurred in by two other justices. That case involved the leasing of agricultural lands, the agreement of lease containing a provision authorizing the sale by the lessor of the leased lands during the term of the lease, upon certain conditions as to the reimbursement of the lessee for improvements, etc. The agreement is in all particulars substantially the same as the lease involved herein. Considering the provision of said lease as to the sale of the lands and the reimbursement of the lessee, Judge Shaw thus construes its legal effect: "The provision for the termination of the lease upon a sale of the premises was solely for the benefit of the lessor. (*Foley* v. *Constantino,* 43 Misc. Rep. 91 [86 N. Y. Supp. 780].) He could undoubtedly waive the benefit thereof and,

without terminating the lease, he could sell and convey the premises subject to the lease. The grantee, if the lessor did not act in the matter prior to the conveyance, could also waive the right and continue the lease in force. In that case the lessee would have no right to declare the lease terminated and demand payment for his improvements. The part of the provision which was for his benefit was that which gave him the right to demand payment for his improvements as a condition concurrent with the exercise by the lessor or his grantee of the option to terminate the lease. If either attempted to exercise the option, the lessee could demand payment for his improvements and the lease would not terminate until such payment was made." (See, also, cases cited in the footnotes of said case as published in L. R. A. 1915C.)

As suggested, if upon no other theory the judgment herein may or should be reversed, it must thus be disposed of upon the doctrine declared in the above excerpt.

The judgment is reversed.

Burnett, J., and Finch, P. J., concurred.