THE BOSTON SAFE DEPOSIT AND TRUST COMPANY v.
FRANK S. THOMAS *et al.*

**No. 10688.**

1. INSURANCE POLICY—*provision in mortgage clause attached
to, that on demand trustee will pay premiums if mortgagor
does not, is a contract to pay, not a condition.* Where, in a
clause attached to a policy of insurance, it is provided that the
loss shall be payable to the trustee named in a trust deed, given
to secure a debt, and that the policy shall not be invalidated by
any act or neglect of the owner of the property, and it is also "pro-
vided that in case the grantor or owner neglects or refuses to pay
any premium due under this policy then on demand the beneficiary
shall pay the same," the clause quoted is not a mere condition, but
where the policy has been delivered to and accepted by the trustee
acting under a trust deed which provides for the maintenance of
insurance on the property described in it, amounts to a contract
on the part of the beneficiary that he will pay the premium due
under the policy if the grantor or owner fails to pay the same.

2. ——— *and agent paying premiums to insurer, is entitled to
subrogation, and may recover from mortgagee.* An insurance
agent representing a number of insurance companies, who furnishes
a large number of policies of insurance, to which a mortgage clause
of the kind above mentioned is attached, and delivers the same to
the trustee, and who pays to the insurance companies issuing the
same the premiums due on all policies so delivered, is entitled to
be subrogated to the rights of the companies under the mortgage
clauses, and may maintain an action, in his own name, against the
holders of the notes secured by the trust deed, to recover the amount
of the premiums advanced by him which the insured has failed to
pay.

Error from Shawnee District Court.    William Thom-
son, Judge *pro tem.*    Opinion filed June 11, 1898.    *Af-
firmed.*

*Wheeler & Switzer*, for plaintiff in error.

*S. B. Isenhart*, for defendant in error.

ALLEN, J.    This action was brought by Frank S.
Thomas against H. P. Throop, The Boston Safe De-
posit and Trust Company, H. E. Ball, and others, to

recover for premiums on policies of insurance, on the Throop Hotel, in Topeka, furnished by Thomas as agent for divers insurance companies. Trial was had to a jury, which brought in a verdict in favor of the plaintiff against Throop and the Deposit and Trust Company for $2032.67, on which judgment was entered. The Deposit and Trust Company brings the case here.

It appears from the evidence that Throop negotiated a loan through Ball, for $65,000, evidenced by two promissory notes, one for $30,000, and the other for $35,000, secured by a trust deed made to Ball as trustee. The trust deed provided :

"Said party of the first part hereby agrees to procure and maintain policies of insurance on the buildings erected, and to be erected upon the said premises, in some responsible insurance company to the satisfaction of said party of the second part, or his successors in trust to the amount of $64,000, loss, if any, payable to the said party of the second part, or his successors in trust, and it is further agreed that every such policy of insurance shall be held by the said party of the second part, or his successors in trust, as collateral or additional security for the payment of said indebtedness, and they shall have the right to collect and receive all moneys which may at any time become payable and receivable thereon, and apply the same when received to the payment of said note, together with the cost and expenses incurred in collecting said insurance, or may elect to have buildings repaired, or new buildings erected on the aforesaid premises."

The mortgagor also covenanted to pay the insurance premiums, and it was provided that, if such payments were not made, the party of the second part, or the party of the third part, might pay such premiums, and that the amount paid should be a lien on the premises, the same as the principal debt, and bear interest at the rate of twelve per cent. ; and that the

party of the third part might at his election proceed at once on such default to foreclose the deed of trust. The trust deed was executed on the second of April, 1888. Thomas furnished the insurance called for by the terms of the trust deed. To all of the policies there was attached what is termed a mortgage clause, providing :

" Loss, if any, payable to Herbert E. Ball, trustee, or to his successor in trust, as interest may appear as hereinafter provided. It being hereby understood and agreed that this insurance as to the interest of the beneficiary only therein shall not be invalidated by any act or neglect of the grantor, or owner of the property insured, nor by vacancy of the premises, nor by the occupation of the premises for purposes more hazardous than are permitted by the terms of this policy ; provided, that in case the grantor, or owner, neglects or refuses to pay any premium due under this policy, then on demand the beneficiary shall pay the same ; provided, also, that the beneficiary shall notify this company of any change of ownership, vacancy, or increase of hazard which shall come to his or their knowledge, and shall have permission for such change of ownership, vacancy or increase of hazard which shall come to his or their knowledge, duly indorsed on this policy."

Two principal questions are discussed. 1st, Whether the mortgage clause attached to the policies amounted to a contract, on the part of the beneficiaries under the trust deed, to pay the premiums in case the mortgagor should fail to pay them, or merely to a condition avoiding the policy ; and, 2d, Whether Thomas stands in such relation to the insurance contract that he is entitled to sue on it.

The first question is not difficult. While the word " provided " ordinarily indicates that a condition follows, there is no magic in the term, but the clause is to be construed from the words employed and from

the purpose of the parties gathered from the whole instrument. These mortgage clauses were furnished to Thomas by Ball to be attached to the policies. The first clause provides for the payment to Ball, as trustee. The second clause provides that the policies shall not be invalidated by any act or neglect of the grantor or owner of the property insured. This included neglect to pay premiums on insurance policies, as well as other neglects, which without such a clause in the policy would have avoided it. By the terms of the deed of trust Throop covenanted to keep the property insured and to pay the premiums; but provision was also made that in case of his failure to do so the trustee or beneficiaries might pay the premiums and tack the amount so paid to the trust deed. In consideration of the provisions against forfeiture through the neglect of the mortgagor, the creditor agreed that, if the mortgagor, or owner, failed to pay the premiums, he would pay them on demand. The value of the property mortgaged was mostly in the hotel building covered by the insurance. In case of its destruction by fire the bulk of the security would be gone, unless covered by valid insurance. For the safety of the holders of the notes it was of the utmost importance that the insurance should be kept in force. The provisions quoted in the deed of trust and the insurance policies were to that end, and rendered the beneficiaries liable for the unpaid premiums. *St. Paul Fire Ins. Co. v. Upton*, 2 N. D. 229.

The second question is one of more difficulty. It appears that all of the insurance on this property was furnished by Thomas, but that it was in many policies. Some of them were issued by companies which he represented as agent; others were obtained by him from other agents. For a time Throop paid the pre-

1. Provision in mortgage held contract.

miums. The first item for which the plaintiff claimed judgment was a premium of $32.50, on May 7, 1890, on a $2500 policy. There is some little discrepancy in the testimony of Thomas and Ball as to the course of their dealings, but according to that most favorable to the plaintiff, which has been accepted by the jury, it appears that at the time the loan was negotiated there was an understanding, between Throop, Ball and Thomas, with reference to the insurance, that Throop was to take out policies to the amount provided for in the trust deed and that Thomas was to furnish the policies. The renewals were issued by Thomas and delivered to Ball. Ball furnished the printed mortgage clauses. He was the agent of the plaintiff in error, and when he received policies of insurance he notified the beneficiaries that he held them for their benefit. Whenever policies expired, if renewals were not sent to him by Thomas, he or some of the clerks in his office called on Thomas for them. The first demand on Ball for the payment of premiums was made either in the latter part of 1891 or the fore part of 1892. After this demand, other policies were furnished; and before this action was commenced a demand was made on Ball, as the agent of the holders of the notes, for the full amount, which he refused to pay. Thomas, in accordance with the customs prevailing in his business, rendered to the companies he represented as agent, monthly accounts of premiums on policies issued, and advanced from time to time all the premiums due to the companies for which he acted as agent. He paid the premiums on policies issued by other agents, for companies they represented, at the time he received the policies from them.

It is not contended that Thomas acted as an insurance broker, who might sue in his own name for poli-

cies furnished, but it is contended on his behalf that there was such an agreement or understanding and course of business between himself and Ball that he is entitled to recover in his own name and on his own account. The principal contention, however, is as to whether Thomas is entitled to be subrogated to the rights of the insurance companies under the mortgage clauses attached to the policies. We hold that these clauses bind the beneficiaries to pay the premiums in case of the failure of Throop to do so. The companies, however, cannot maintain any action, because they have already received their money. It does not seem to be seriously contended that there was any legal obstacle in Thomas' way in obtaining judgment against Throop for the premiums. He makes no complaint in this court of the judgment entered against him. If an action may be maintained by Thomas against Throop, the principal debtor, and if the beneficiary is liable for the premium in case of Throop's default, why may not Thomas also maintain his action against the beneficiary? If he is subrogated to the rights of the various companies as against the principal, why is he not also as against the surety? Subrogation is a creature of equity, invented to prevent a failure of justice. It has been said:

2. Agent entitled to subrogation.

"Subrogation is the substitution of another person in place of a creditor, so that the person substituted will succeed to all the rights of the creditor having reference to the debt due him. It is independent of any merely contractual relations between the parties to be affected by it, and is broad enough to include every instance in which one party is required to pay a debt for which another is primarily answerable, and which, in equity and good conscience, ought to be discharged by the latter." *Johnson v. Barrett*, 117 Ind. 551; 10 Am. St. Rep. 83.

"Subrogation is purely an equitable result, and de-

pends like other controversies in equity, on facts, to develop its necessity in order that justice may be done. Privity of contract is not necessary to its support. It may and does exist on principles of mere equity and benevolence." *Mosier's Appeal*, 56 Pa. St. 76; 93 Am. Dec. 783.

It is often said that this equitable aid may never be invoked by a mere volunteer, or intermeddler, who seeks to become a creditor without right or necessity for doing so. The contention on behalf of the plaintiff in error is that this is the attitude of Thomas; that he voluntarily paid these premiums; that credit was extended to Throop alone, and that he may only look to Throop for payment. Under the facts disclosed in this case it would certainly be a great misuse of terms to call Thomas an intermeddler. He was really the visible party with whom both Throop and Ball dealt for the insurance. He provided a large number of policies. The largest single policy charged for in his account was for five thousand dollars. The companies issuing the policies looked to Thomas only for the premiums. Ball called on him, and him alone, for the renewals. He was interested both in controlling the line of insurance on the hotel for the purpose of obtaining his commissions, and in maintaining his standing with the companies he represented. In order to accomplish the first, he had to keep the full amount of policies in force; and for the latter, it was necessary that the premiums be promptly remitted. He was in no sense a volunteer or intermeddler. The doctrine of subrogation, being entirely independent of any contractual relation, may properly be invoked in a case like this; for certainly in equity and good conscience the right of Thomas to recover, from the holders of the notes secured by this trust deed, the premiums on the policies of insurance of which they have had the full

benefit, is as clear and as apparent as that of the companies would be if they had not received their pay and were prosecuting separate actions to recover it.    The defendants have been protected from loss of their security by the policies paid for with Thomas' money and received by them at his hands.    In equity and good conscience he should be permitted to enforce the liability imposed by the mortgage clauses.    This was the law administered in the trial court, and meets with our approval.

There is some criticism of the findings of the jury, but we perceive nothing in them inconsistent with each other, or with the general verdict in the case. The demand on Ball was as efficient as a demand on the Deposit and Trust Company.

The judgment is affirmed.