## J. S. WHITEHEAD v. WILSON KNITTING MILLS.

(Filed 28 September, 1927.)

**Insurance, Fire—Mortgages—Trusts—Premiums—Loss Payable Clause—Conditions—Covenants—Contracts—Cancellation—Notice—Statutes.**

The provision in the loss payable clause of a fire insurance policy taken out by the mortgagor that the mortgagee (or trustee) will pay the premiums on demand should the mortgagor not do so, is *held* to be a condition upon which the mortgagee may receive the benefit of the protection afforded by the policy as a special contract made in his favor, and not as a covenant that he will pay the premiums on demand of the insurer, upon the mortgagor's default: and upon the mortgagee's refusal or neglect to pay the premiums in default upon the insurer's demand, the latter may, after ten days written notice, cancel the policy contract under the provisions of our statute. C S., 6437.

CONNOR, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Nunn, J.,* at June Term, 1927, of WILSON.

Civil action to recover of defendant premiums paid by plaintiff on fire insurance policies, tried originally in the Wilson General County Court, where there was a partial recovery for the plaintiff. On appeal to the Superior Court the cause was remanded with direction that a judgment of nonsuit be entered in the case.

The fact situation is as follows:

1. In March, 1920, J. T. O'Briant executed to the defendant a purchase-money deed of trust on land situate in Wilson County, to secure an indebtedness of $30,000, in which, among other things, "The said O'Briant agrees to and with the said Knitting Mills Company, that he will cause the buildings located upon said premises to be insured against loss or damage by fire in at least the sum of $25,000, and that he will pay all premiums thereon, and that the said policy or policies shall be made payable to the said trustee for the benefit of the said Knitting Mills, and that if the said O'Briant shall fail, neglect or refuse to effect such insurance and to pay the premiums thereon, then the said Knitting Mills may effect such insurance and pay all premiums thereon, and all premiums paid by it shall be due and payable within 30 days from date of payment, and shall be secured in same manner as the notes or bonds herein recited are secured."

2. Pursuant to this stipulation the said O'Briant, on 25 March, 1920, procured and had the plaintiff, as agent, to issue to him three fire insurance policies of $10,000 each on the buildings located on the premises above mentioned. Each of said policies was issued for one year and contained, or had attached thereto, a "New York standard mortgage clause" in which, among other things, it was provided that any loss or

damage arising under said policy, should be payable to the trustee, as his interest might appear, etc.

3. Upon the execution of the policies, they were delivered to the trustee, named in the deed of trust, who immediately forwarded them to the defendant at its main office in Tarboro, where they were received and accepted by the defendant, and have been in its possession ever since.

4. One of the provisions appearing in the standard mortgage clause attached to each of the policies is as follows: "*Provided,* that in case the mortgagor or owner shall neglect to pay any premium, due under this policy, the mortgagee (or trustee) shall, on demand, pay the same."

5. Though repeated demands were made upon J. T. O'Briant to pay the premiums on these policies, he neglected to do so for more than sixty days; whereupon the plaintiff notified the trustee of the nonpayment of said premiums, and was advised that, in the opinion of the trustee, "both the mortgagor and the mortgagee are liable for the premiums."

6. Acting upon the assumption of liability on the part of both O'Briant and the defendant for the payment of said premiums, the plaintiff, in accordance with local custom, paid, out of his own personal funds, the premiums, amounting in the aggregate to $495, to the companies issuing the policies.

7. Thereafter, on 5 September, 1920, the plaintiff, for the first time, notified the defendant of the nonpayment of said premiums and demanded payment thereof. The defendant declined and refused to pay the same. The policies were not surrendered by the defendant, nor were they canceled by the plaintiff. They remained in full force and effect until 25 March, 1921, the date of their expiration.

8. The plaintiff had the right at any time to cancel said policies, or to have them canceled, for nonpayment of premiums, also the right to cancel them, as to the interest of the mortgagee, by giving the mortgagee ten days written notice of cancellation. C. S., 6437. Had this course been pursued, the defendant would have taken out other insurance and added the amount of premiums, required to be paid therefor, to O'Briant's indebtedness under the terms of the deed of trust.

9. Plaintiff has been unable to collect for the premiums in question, and O'Briant is now financially unable to pay them. The plaintiff is seeking in this action to hold the Wilson Knitting Mills liable for the payment of said premiums under the terms of the policies and the deed of trust.

From the order and judgment of the Superior Court, remanding the cause with direction that it be nonsuited, the plaintiff appeals, assigning error.

*John H. Jennings for plaintiff.*
*John L. Bridgers for defendant.*

STACY, C. J., after stating the case: The appeal presents, for the first time in this jurisdiction, the question as to whether the clause, *"Provided,* that in case the mortgagor or owner shall neglect to pay any premium, due under this policy, the mortgagee (or trustee) shall, on demand, pay the same," incorporated in the New York standard mortgage clause, attached to each of the policies, for the unpaid premium on which it is sought to hold the defendant liable, is to be construed as a *covenant* on the part of the mortgagee to pay any premium, neglected or omitted to be paid by the owner or mortgagor, or merely as a *condition,* which, if not fulfilled, will bar the mortgagee from any right of recovery for loss or damage under the policy of insurance. The plaintiff contends that the words in this clause import a contract on the part of the mortgagee to pay the premium if the mortgagor fail or neglect to pay it, while the defendant says that the clause in question should be construed as a condition, and not as an agreement.

According to the clear weight of authority in other jurisdictions, where the clause in question has been construed, it is held to be a condition, and not a covenant. In fact, in but two cases has a contrary conclusion been reached, and they have not been followed in the more recent decisions.

Apparently, the earliest reported case dealing with the matter is *St. Paul F. & M. Ins. Co. v. Upton* (1891), 2 N. D., 299, 50 N. W., 702. There it was said that the mortgage clause, like the ones now before us, amounted to a promise on the part of the mortgagee to pay the premium, due on the insurance policy, in case the mortgagor failed to pay it.

This case was followed, with like result, in *Boston Safe D. & T. Co. v. Thomas* (1898), 59 Kan., 470, 53 Pac., 472.

But as opposed to these North Dakota and Kansas cases, in which the clause in question was held to be a covenant and not a condition, the following South Dakota, New York, Rhode Island, Texas, California and Wyoming cases, supported by two from Missouri, hold it to be a condition and not a contract or covenant: *Ormsby v. Phœnix Ins. Co.* (1894), 5 S. D., 72; *Coykendall v. Blackmer* (1914), 161 App. Div., 11, 146 N. Y. S., 631; *Home Ins. Co. v. Union Trust Co.* (1917), 40 R. I., 367, L. R. A., 1917 F, 375; *Johnson, Sansom & Co. v. Fort Worth State Bank* (1922), 244 S. W. (Tex.), 657; *Schmitt v. Gripton* (1926), 247 Pac. (Cal.), 505; *Farnsworth v. Riverton Wyoming Refining Co.* (1926), 249 Pac. (Wyoming), 555. And in support of the

same conclusion are the cases of *Trust Co. v. Phœnix Ins. Co.; Same v. German-American Ins. Co.* (1919), 201 Mo. App., 223, 210 S. W., 98, both being disposed of in a single opinion.

The position of the majority of the courts is perhaps as well stated in *Coykendall v. Blackmer,* 161 App. Div., 11, 146 N. Y. S., 631, as in any other case. The facts were that George Blackmer, as mortgagee of certain real property, became beneficiary under the standard mortgage clauses attached to a number of fire insurance policies, which, at the request of the owner and mortgagor, had been issued and delivered to the mortgagee by the insurance agent, the plaintiff in the case. Nine of the policies had been issued in 1907 for the term of three years, and renewed for a like term in 1910; and two were for one year each. The action was brought against the executrix of the estate of the mortgagee. The mortgagee procured none of the policies, nor were they issued at his request, but all were mailed to and received and retained by him, whether with the knowledge of the contents of the policies and the attached riders did not appear, and was said to be perhaps not material. No part of the premium was ever paid by the owner, and no demand for payment of any portion of the premium was made by the plaintiff upon the mortgagee until some time in January, 1911. The plaintiff obtained from the insurance companies assignments of all causes of action against the defendant and brought suit thereon.

Speaking to the question presented in that case, which is similar to the one raised in the case at bar, the court said:

"The only question, therefore, before us is whether the plaintiff as matter of law is entitled to a recovery; that is, whether the clause, '*provided,* that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same,' should be construed as a covenant upon the part of the mortgagee to pay the premium in the event of the neglect of the mortgagor to pay the same, or should be construed merely as a condition which, if not complied with by the mortgagee, would foreclose him of the right to a recovery given him in the preceding portion of the mortgagee clause, notwithstanding the happening of any of the prohibited matters specified therein, which under the conditions of the policy itself would render the policy void. It must be conceded that unless the clause in question constituted a covenant, no recovery can be had in this action.

"We are of the opinion that the word 'provided' was used in the sense of 'if' or 'on condition,' and hence that the clause referred to should be construed as a condition and not as a covenant. The word 'provided' is defined by several authorities as follows: By Webster, 'on

condition; by stipulation; with the understanding; if'; by Cyclopedia of Law and Procedure, 'on condition; by stipulation; the appropriate term for creating a condition precedent; sometimes used in the sense of "unless" '; in *Robertson v. Caw* (3 Barb., 410, 418), 'the appropriate term for creating a condition precedent'; in *Locke v. Carmers' Loan & Trust Co.* (140 N. Y., 135, 148), 'The word "provided" usually indicates a condition'; and to the same effect, *Brennan v. Brennan* (185 Mass., 560); in *Rich v. Atwater* (16 Conn., 408, 418), 'The proviso, it is said, requires such a construction. There has been much nice discussion upon the word "provided." 2 Co. 72 Cro. Eliz., 242, 385, 486, 560; Cro. Car., 128.\* It is certain, as is said by *Swift, J.,* that there is no word more proper to express a condition than this word "provided," and it shall always be so taken, unless it appears from the context to be the intent of the parties that it shall constitute a covenant. *Wright v. Tuttle,* 4 Day (Conn.), 326.' Many authorities in other States might be cited to the same effect.

"Unquestionably the mortgagee clause constituted a new agreement between the insurance company and the mortgagee, and was attached to the policy for the purpose of enabling the mortgagor to perform the covenant of insurance contained in the mortgage, and in consideration of the taking of the policy by the mortgagor. It must be interpreted in such manner as to carry out the intention of the parties, and for that purpose the whole clause must be considered. While the mortgagee clause was for the benefit of the mortgagee in the respect before referred to, it was for the benefit of the insurance company in that it required the mortgagee to notify the company of any change of ownership or occupancy or increase of hazard which should come to his knowledge and to pay the premium for the increased hazard, otherwise the policy should be null and void. It also gave the insurance company, upon the payment of any sum to the mortgagee as loss or damage under the policy, the right, upon claiming that as to the owner no liability existed, to be subrogated to the extent of such payment, to all the rights of the mortgagee, or at its option to pay the mortgagee the amount of the mortgage and receive an assignment thereof and of all securities held as collateral to the mortgage debt.

"The apparent meaning of the mortgagee clause is that the insurance, as to the interest of the mortgagee, shall not be invalidated by any act or neglect of the mortgagor if the mortgagee shall on demand pay any unpaid premium, and hence that if the mortgagee shall on demand neglect or refuse to pay the unpaid premium he shall no longer be entitled to avail himself of the stipulation that no act or neglect upon the part of the mortgagor shall invalidate the policy, but the insurance of

the interest of the mortgagee shall thereafter be governed by the policy itself, and this was doubtless the relation of the mortgagee and the insurance companies following the demand of the company for the payment of the premium in January, 1911, and the neglect of the mortgagee to pay the premiums."

In *Home Ins. Co. v. Union Trust Co.,* 40 R. I., 367, the Supreme Court of Rhode Island, after construing the two provisos, contained in the standard mortgage clause, as conditions subsequent, had the following to say in regard to the question now before us:

"Under this construction of the two provisos the effect of the mortgagee clause as a whole would be as follows: It would, as stated in the case of *Smith v. Union Insurance Co.,* 25 R. I., 260, constitute a separate contract between the insurance company and the mortgagee, entered into at the same time as the contract between the insurance company and the mortgagor and based upon the same consideration. While it would come into existence as soon as the policy was delivered, it would not become active until some default, by nonpayment of the premium or otherwise, had been made by the mortgagor. Then it would come into full force and effect and would give the mortgagee an independent right against the insurance company, which would, however, be subject to certain conditions subsequent. One of these would be that, if any part of the premium remained unpaid, the mortgagee would have to pay it upon demand or it would lose its rights under its independent contract, without being under any obligation to pay the unpaid premium if it preferred to let the policy lapse.

"This construction protects fairly the interests of the insurance company and the mortgagee. The insurance company is entitled to the payment of the premium on the delivery of the policy, and consequently has the power to protect itself fully, without recourse to the mortgagee. It is in a position at all times, with full knowledge of the facts in regard to the payment of premiums, to call for payment from the mortgagor, and, if dissatisfied, can cancel the policy by giving the prescribed notice. On the other hand, the mortgagee in many cases has no means of knowing whether the premium has been paid, and, as the insurance company must first make demand on the mortgagee for payment before rights of the mortgagee can be affected by the failure of the mortgagor to pay, it would impose an unreasonable burden on the mortgagee to require it to keep constant watch on the condition of the account between the insurance company and the mortgagor in order to protect itself from liability for unpaid premiums."

We concur in the opinion of the majority of the courts that the clause in question is a condition and not a contract or covenant. To

hold otherwise would be to render the mortgagee liable for such premiums even after its interest in the mortgaged premises had expired, either by foreclosure or payment of the mortgage.

With respect to the rights of the mortgagee under the rider, as it is called, generally known as the New York standard mortgage clause, it was said in *Bank v. Ins. Co.,* 187 N. C., p. 102, "that this clause operates as a separate and distinct insurance of the mortgagee's interest, to the extent, at least, of not being invalidated by any act or omission on the part of the owner or mortgagor, unknown to the mortgagee; and, according to the clear weight of authority, this affords protection against previous acts as well as subsequent acts of the assured," citing authorities for the position.

It was held by a majority of the Court in *Johnson, Sansom & Co. v. Fort Worth State Bank,* decided by the Court of Civil Appeals of Texas in June, 1922, reported in 244 S. W., 657, that the insurance agent, plaintiff in the case, who had voluntarily paid the premium on the policies there in question, had no right of recovery against the mortgagee, in the absence of a contract or promise on the part of the latter to pay the same, and this upon the principle that no right of action arises to one who voluntarily pays money for another, without any agreement, express or implied, that it will be repaid. 21 R. C. L., 32.

It has often been said that the law will not aid a mere volunteer, or one who seeks to become a creditor without right or necessity for so doing. *Crumlish v. Central Improvement Co.,* 38 W. Va., 390, 23 L. R. A., 120, and note.

When the defendant positively refused and declined to pay the premiums, on demand, the plaintiff was at liberty to cancel the policies, or have them canceled, and thus save to himself the pro rata part of the premiums then unearned. His failure to do so, on the facts of the present record, cannot fairly be chargeable to the defendant.

The case of *Colby v. Thompson,* 16 Cal. App., 271, 64 Pac., 1053, cited by appellant, is distinguishable, for there the mortgagee, on being notified of the nonpayment of the premium, directed the agent not to cancel the policy, and promised, independent of the provisions in the standard mortgage clause, to pay the premium, in case the mortgagor failed to do so; and, in reliance on this promise, the policy was not canceled.

After a thorough consideration of the record, we are constrained to believe that the judgment of the Superior Court is correct and ought to be upheld.

Affirmed.

CONNOR, J., took no part in the consideration or decision of this case.