No. 30,348.

John B. Stoddart and George G. Pinney, doing business as The Brown County Agency, *Appellees*, v. J. W. Black, Mrs. Beulah Black, and The Ætna Building and Loan Association, *Appellant.*

(8 P. 2d 305.)

Opinion filed March 5, 1932.

*Paul B. Bailey,* of Hiawatha, *John S. Dean, John S. Dean, Jr., Frazor T. Edmondson* and *George W. Ball,* all of Topeka, for the appellant.

*Walker F. Means* and *Lloyd S. Miller,* both of Hiawatha, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This is an action by agents of fire insurance companies to recover premiums on fire insurance policies from the mortgagee of the insured premises by virtue of a provision of the mortgage clause. Judgment was for plaintiffs, and defendant has appealed.

The material facts are as follows: Plaintiffs are fire insurance agents at Hiawatha, Kan. J. W. Black and wife were the owners of a one-story building at Severance, Kan., used by them as a grocery, market, restaurant and dwelling. The building and lot on which it was situated were mortgaged to the Ætna Building and Loan Association for $1,000. On October 31, 1927, the Blacks applied to plain-

tiffs for insurance on their property. Plaintiffs procured for them two insurance policies, one policy in one company and the other in another, for $3,100 each, of which $1,200 was on the building and the remainder on office furniture and fixtures, merchandise, a frigidaire, and household goods. The premiums on the two policies amounted to $210.88. Black gave plaintiffs his note for $200, due May 1, 1928, and a check for the balance. Each of the policies had attached to it the standard mortgage clause. Black did not pay his note in full when it was due. Plaintiffs wrote the mortgagee, informing it that the premiums had not been paid and if they were not paid at once they would have to cancel out, and called attention to the terms of the mortgage clause. The mortgagee replied that its loan was for only $1,000 and that it did not care to pay for more than that amount of insurance. Plaintiffs then wrote the mortgagee that since one of the policies would meet its requirements one of them might be returned, and asked for the premium on the other in the sum of $103.50. The mortgagee returned the one policy, retaining the other, and again stated that it would pay the premium on a policy for the amount of its loan, $1,000, but declined to pay more. Plaintiffs replied: "If you will send us your check for $33.40 it will cover $1,000 on the building." The mortgagee promptly sent the check on October 1, 1928. On October 31, 1928, plaintiffs renewed the two policies for the Blacks. The amounts were slightly reduced, making the premiums on the two renewal policies $204.74, for which Black gave plaintiffs his note, due March 1, 1929. When that note came due the amount due on it and the notes given by Black to plaintiffs on the original policies amounted to $337.68, for which Black gave his note to plaintiffs. Later he made payments thereon which reduced it to $287. About October 1, 1929, plaintiffs requested the mortgagee, who at that time had the custody of the two renewal policies, to return them for cancellation. The mortgagee at first declined to return the policies, stating that it held them as collateral to its loan, but on October 18, in compliance with plaintiffs' request, the mortgagee returned the policies for cancellation. This action was brought against the Blacks as principals and the mortgagee as surety for the balance due plaintiffs for premiums on the two original policies and the two renewal policies. The Blacks could not be served with summons, and the action proceeded against the mortgagee alone. The mortgage clause attached to each of the policies, omitting formal parts at the beginning and close, reads as follows:

"Loss or damage, if any, under this policy, shall be payable to the Ætna Building and Loan Association as mortgagee, or trustee (as its interest may appear), and this insurance, as to the interest of the mortgagee or trustee, only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within-described property nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy. *Provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee, or trustee, shall, on demand, pay the same.* Provided, also, that the mortgagee, or trustee, shall notify this company of any change of ownership or occupancy or increase of hazard, other than foreclosure, which shall come to the knowledge of said mortgagee, or trustee, and, unless permitted by this policy, it shall be noted thereon and the mortgagee, or trustee, shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise, this policy shall be null and void. This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee, or trustee, for ten days after notice to the mortgagee, or trustee, of such cancellation, and shall then cease, and this company shall have the right, on like notice, to cancel this agreement. Whenever this company shall pay the mortgagee, or trustee, any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt. But such subrogation shall be in subordination to the claim of said party for the balance of the debt so secured. Or it may, at its option, pay to the mortgagee, or trustee, the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities."

(We italicize the sentence specifically relied upon by plaintiffs.)

Under the facts the trial court held that with respect to the premiums on the two original policies there had been an accord and satisfaction, and rendered judgment for plaintiffs for $129.62, which we understand to be the amount of the premiums on the two renewal policies which had not been paid by the Blacks.

Appellant's principal contention is that we should construe the italicized sentence in the mortgage clause above as a condition and not as a covenant. The question was squarely before this court in *Safe Deposit Co. v. Thomas,* 59 Kan. 470, 53 Pac. 472, where the identical language in a mortgage clause was construed to be a covenant. The decision was in accord with *Insurance Company v. Upton,* 2 N. D. 229, 50 N. W. 702. We are asked, in effect, to overrule that decision. We do not care to do so.

It is true that, beginning with the decision of a divided court (third department, appellate division of the supreme court), in *Coykendall v. Blackmer*, 146 N. Y. Supp. 631, holding that the words express a condition, several other courts have reached the same conclusion. (*Home Insurance Co. v. Union Trust Co.*, 40 R. I. 367, 100 Atl. 1010; *Schmitt v. Gripton*, 77 Cal. App. 429, 247 Pac. 505; *Farnsworth v. Refining Co.*, 35 Wyo. 334, 249 Pac. 555; *Whitehead v. Knitting Mills*, 194 N. C. 281, 139 S. E. 456; *Acuff Co. v. Bankers Trust Co.*, 157 Tenn. 99, 7 S. W. 2d 52; *Olmstead & Co. v. Insurance Co.*, 118 Ohio St. 421, 161 N. E. 276.)

These decisions proceed, primarily, upon the theory that the word "provided" at the beginning of the sentence characterized the entire sentence as being a condition. In *Johnson, Sansom & Co. v. Fort Worth State Bank*, 244 S. W. 657, 661 (Tex. Civ. App.), a majority of the court declined to take that view. While it is true that the word "provided" is an appropriate word to introduce a condition, and ordinarily is so used, such is not the only use of the word. It may be used to express a covenant. (*Lyon et al. v. Hersey et al.*, 103 N. Y. 264, 8 N. E. 518; *Heaston v. Board of Commissioners of Randolph Co.*, 20 Ind. 398, 403; *Hartung v. Witte*, 59 Wis. 285, 18 N. W. 175; *Stanley v. Colt*, 72 U. S. 119, 18 L. Ed. 502; *Woodruff v. Woodruff*, 44 N. J. Eq. 349, 16 Alt. 4; *Rich v. Atwater*, 16 Conn. 409, 419; *Chapin v. Harris*, 90 Mass. 594; *MacKenzie v. Trustees of Presbytery of Jersey City*, 67 N. J. Eq. 652, 61 Atl. 1027.)

It is sometimes used as "with the understanding" (*Nusly et al. v. Curtis et al.*, 36 Colo. 464, 85 Pac. 846), or "with the stipulation" (*So. Col. Co. v. Derfler*, 73 Fla. 924, 75 So. 790).

Which meaning should be given to it depends upon the language which follows it, construed with the other language and the purpose of the instrument in which it is embodied. These questions were before the court and thoroughly considered in the decision of *Safe Deposit Co. v. Thomas*, supra.

The first question to be determined by the court was whether the mortgage clause attached to the policy amounted to a contract on the part of the beneficiary under the trust deed to pay the premiums in case the mortgagee should fail to pay them, or merely to a condition avoiding the policy. With respect to that the court said:

"While the word 'provided' ordinarily indicates that a condition follows, there is no magic in the term, but the clause is to be construed from the words employed and from the purpose of the parties gathered from the whole instrument." (p. 472.)

There is then a discussion of the words which follow and the purpose of the instrument, with the conclusion that the words employed constituted a covenant to pay. The Missouri court of appeals (St. Louis), referring to this question in *Trust Co. v. Insurance Co.*, 201 Mo. App. 223, 237, 210 S. W. 88, said:

"We feel safe in holding that the word 'provided' ordinarily indicates that a condition follows but that 'there is no magic in the term,' but the clause in a contract or written instrument following the word 'provided' is to be construed from the words employed and from the purposes of the parties gathered from the whole instrument." (Citing our case, *Safe Deposit Co. v. Thomas, supra*, among others.)

The question with reference to the interpretation of this clause was recently before the court of appeals of Georgia in the case of *Security Ins. Co. v. Eakin*, 41 Ga. App. 257, 152 S. E. 606, where it was held:·

"Where there is embraced in a fire insurance policy what is known as a 'New York standard mortgagee clause,' and in connection therewith and as a part thereof the following: 'That in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same,' and where the mortgagee has knowledge of this provision in the policy, or knowingly accepts benefits therefrom, it amounts to a contract on his part to pay the premium due on the policy if the owner fails to pay." (Syl. ¶ 1.)

The opinion follows and quotes approvingly from our case, *Safe Deposit Co. v. Thomas, supra.* So that decision, when made, was predicated upon authority, gave sound reasons for the conclusion reached, and has been followed in other jurisdictions. It has been the law of this state for about a third of a century, and doubtless has governed a multitude of transactions to which it is applicable, without serious loss or inconvenience to anyone by reason thereof being called to the attention of the court. The fact that some of the courts have taken a different view of the meaning of the language used in the clause, even if we were to concede it was susceptible of that meaning, is no reason why we should change the fair and reasonable meaning of the language previously given to it by this court.

Appellant contends that plaintiffs did not show themselves entitled to be subrogated to the rights of the insurance company for the collection of the premiums. That agents may be so subrogated was ruled in *Safe Deposit Co. v. Thomas, supra.* There was evidence in this case that plaintiffs, in the due course of business, as

was their custom, paid the premiums to the insurance companies. We think that, and other evidence previously stated herein, sufficient on this point.

In support of the judgment of the trial court it is argued that the course of dealings between plaintiffs and defendant, taken in connection with the provisions of the mortgage clause, justified the judgment rendered. The point is not well taken. The mortgage clause evidenced a contract between the insurance company and the mortgagee to the extent, and only to the extent, of the mortgagee's interest in the property. It never had any interest in this property, except in the real property, which includes the building on the lot, and that only to the extent of $1,000. It had no interest in the furniture and fixtures, the stock of merchandise, the frigidaire, or the household goods, covered by the insurance policy. Plaintiffs at no time were justified in expecting the mortgagee to pay insurance premiums on that class of property. With respect to the original policies, the correspondence disclosed that the mortgagee was interested in one policy only—not in two—and that to the extent of its mortgage of $1,000, for which it was willing to and did pay the premium. Its interest to that extent only was acceded to by plaintiffs. The mortgagee had no greater interest in the renewal policies. The premium on one of the renewal policies on the building, to the amount of $1,000, is all the mortgagee should have been asked or adjudged to pay.

It is clear from the record of this case, including the correspondence of the parties, that the premium on one policy, to the extent of $1,000 of insurance, is $33.40. Judgment should have been for plaintiffs for that sum. There is no purpose in having a retrial to ascertain the amount of that item. The judgment of the court below will be modified so as to make the judgment in favor of plaintiffs against the defendant $33.40, and as so modified, it is affirmed.