[File No. 6208.]

ROY T. BAKER, as Surviving Partner of Baker Insurance Agency, a Co-partnership, Respondent, v. FARGO BUILDING AND LOAN ASSOCIATION, a Corporation, Appellant.

(252 N. W. 42.)

Opinion filed December 19, 1933. Rehearing denied January 4, 1934.

*Conmy, Young & Conmy,* for appellant.

*Nilles, Oehlert & Nilles,* for respondent.

BURKE, J. The plaintiff, as surviving partner of the Baker Insurance Agency, a co-partnership, brings this action to recover the premiums from the mortgagee of insured mortgaged property. The trial court made findings of fact and conclusions of law favorable to the plaintiff and from a judgment duly entered thereon the defendant appeals.

There is no dispute in the facts. At the time of the institution of the action the defendant, Fargo Building and Loan Association, was the owner of two mortgages, one for $40,000 and one for $5,000, executed by one C. H. Porritt, covering a certain business block in the city of Fargo. The said mortgages contained a covenant on the part

of Chas. H. Porritt to keep such premises and buildings insured against loss by fire, tornado and windstorm and against loss of use, occupation and rents to said premises arising out of any such casualty and requiring the said Chas. H. Porritt to procure and deliver to the said defendant, Fargo Building and Loan Association, policies of insurance acceptable to the said Fargo Building and Loan Association, with loss, under said policies, payable to the said Fargo Building and Loan Association, as such mortgagee, as its interest might appear. That said mortgage further provided that in case the said C. H. Porritt failed, neglected or refused to procure said insurance or to deliver said policies to said mortgagee, that the said mortgagee was authorized to obtain and procure such insurance, and if said mortgagee was required to pay or advance any insurance premiums for the protection of said mortgaged property, then that amount so paid or advanced by said mortgagee should constitute a part of said mortgage indebtedness and that the amount thereof, together with interest, should be added to and constitute a part of said mortgage debt which might be enforced against said mortgaged property. The said C. H. Porritt, with the approval of the defendant, procured certain insurance policies from the plaintiff and delivered them to the defendant. The names of the insuring company, the policy numbers, the amount of the policy and the premiums involved are as follows:

| Insuring Company | Policy Number | Date | Amount of Policy | Premium |
|---|---|---|---|---|
| N. Y. Underwriters Ins. Co. | 27130 | 2–18–27 | $ 8,850 | $178.06 |
| St. Paul Fire & Mar. Ins. Co. | 7767 | 4–20–28 | 9,000 | 155.25 |
| N. Y. Underwriters Ins. Co. | 27276 | 5–26–28 | 4,500 | 90.54 |
| N. Y. Underwriters Ins. Co. | 2066 | 6–29–28 | 10,000 | 50.00 |
| St. Paul Fire & Mar. Ins. Co. | 7784 | 9–14–28 | 10,000 | 201.20 |
| St. Paul Fire & Mar. Ins. Co. | 321 | 1– 6–29 | 10,000 | 50.00 |
| Hartford Fire Insurance Co. | 10431 | 8–13–29 | 7,500 | 139.13 |
| St. Paul Fire & Mar. Ins. Co. | 7868 | 9– 7–29 | 2,500 | 46.25 |
| Ætna Insurance Company Co. | 9187 | 9–24–29 | 13,500 | 249.75 |
| St. Paul Fire & Mar. Ins. Co. | 7886 | 12–11–29 | 5,000 | 92.75 |
| N. Y. Underwriters Ins. Co. | 27443 | 2–28–30 | 8,850 | 164.17 |

As a further security for the payment of the mortgage debt, the de-

fendant took an assignment of the rents of the mortgage property and the record shows that it was collecting such rents at the time of the trial.

Sometime after the last policy was issued Porritt died and the plaintiff who, by virtue of a contract with the insurance companies, had paid to the various companies the amount of the premiums, less 25% his commission, filed a claim for the amount paid in premiums against the Porritt estate in the county court, which claim has not been paid. The mortgage clause in each insurance policy had the usual provision for subrogation and each of the insurance companies executed and delivered to the Baker Insurance Agency an assignment describing each policy, the amount of the premium and containing this provision:

"Whereas, The premium on said policy was not paid by the said owner and/or the mortgagee, and, whereas, the premium on said policy was charged to and was also an obligation of Baker Insurance Agency of Fargo, North Dakota, and said premium has been paid by said Baker Insurance Agency to the undersigned.

"Now therefore, In consideration of the payment to the undersigned, of a sum of money equal to the amount of said premiums, the receipt whereof is hereby acknowledged, the undersigned does hereby assign, set over, transfer and subrogate to the said Baker Insurance Agency of Fargo, North Dakota, all rights, claims, choses or things in action which the undersigned might have as against the said owner and/or mortgagee, to whom said policy was issued and do hereby authorize and empower the said Baker Insurance Agency at its own cost and expense to sue, compromise or settle in its name or otherwise, the said claim for said unpaid premium and said Baker Insurance Agency is hereby fully substituted in the place of the undersigned and subrogated to all of the rights of the undersigned by reason of the issuance and delivery of the said policy."

On November 29, 1932, the plaintiff made demand upon the defendant for the payment of the premiums. The plaintiff relies on the clause contained in each of the insurance policies as follows:

"Loss, if any, payable to Fargo Building and Loan Association, or assigns as mortgagee, as such interest may appear. This policy as to the interest therein of the said payee, as mortgagee (or trustee) only, shall not be invalidated by any act or neglect of the mortgagor or owner

322

of the within described property nor by the commencement of fore-closure proceedings, nor the giving of notice of sale relating to the property, nor by any change in the interest, title, or possession of the property, nor by any increase of hazard; *Provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same; and Provided further, that the mortgagee (or trustee) shall notify this company of the commencement of foreclosure proceedings, and of any notice of sale relating to the property, and of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, the same shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for any increased hazard."*

It is the contention of the appellant (1) that the standard mortgage clause of the insurance contract is a condition and not a covenant, consequently there is no obligation on the part of the appellant to pay the premiums. (2) The plaintiff is not entitled to be subrogated to the rights of the insurance companies by virtue of his laches. (3) The plaintiff is not entitled to recover the 25% commission.

The first case construing the uniform standard mortgage clause in an insurance policy is the case of St. Paul F. & M. Co. v. Upton, 2 N. D. 229, 50 N. W. 702. Appellant admits that this case holds that a similar mortgage clause in an insurance policy was a covenant and not a condition upon which the mortgagee was liable for the premiums, but claims that the decision in the Upton Case should be overruled as contrary to the great weight of authority as shown by the decisions rendered since the decision in that case.

It is also the contention of the appellant that the clause construed in the Upton Case differs materially from the clause involved in this action. There is no merit to this, as the clause construed in the Upton Case is the identical clause relied upon by the plaintiff in this action, namely, "Provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same." In construing this clause in the Upton Case, the court said: "Does the clause contain an express promise on the part of the defendant, the mortgagee, to pay the premium in case of the default of the mortgagor? It is insisted that it merely

prescribes a condition, on the performance of which the mortgagee may entitle himself to the benefits of this clause. But why should this agreement be so construed as to give the mortgagee the option to avail himself of its provisions while the insurance company is to have no choice? If this was the intention of the parties, why did not the provision read as follows: 'Provided, that the mortgagee, in case of the default of the mortgagor, shall have paid the premium at the time he claims the benefit of this clause.' This would have left in him an option. But the clause, as it does read, is an absolute engagement to pay the money on the default of the mortgagor—'then, on demand the mortgagee would pay the same.' The clause provides that no neglect or act of the mortgagor, nor shall the vacancy of the premises, invalidate the policy. If defendant's contention is sound, this provision would be nugatory, if the mortgagor should pay the premium on time, for it is only in case of the mortgagor's default that the mortgagee can perform this condition of payment, and defendant insists that it is only on performance of such condition by him that he can have any rights under the mortgage clause. This construction would destroy its effect in many cases. It would often deprive the mortgagee of any benefit from the provision that he would not be prejudiced by any act or neglect of the mortgagor, nor by reason of the vacancy, etc., of the premises. The maxim, ut res magis valeat quam pereat, is a safe guide. The mortgage clause gave the mortgagee immunity from certain forfeitures resulting under the policy from the mortgagor's acts or omissions, and the mortgagee in terms agreed to pay for this immunity the premiums in case of the mortgagor's default. This is the clear import of the agreement."

In the instant case the policies did not become void as to the mortgagee on the failure of the mortgagor to pay the premiums. The mortgage clause states "This policy as to the interest therein of the said payee, as mortgagee (or trustee) only, shall not be invalidated by any act or neglect of the mortgagor or owner . . . nor by the commencement of foreclosure proceedings, nor the giving of notice of sale relating to the property, nor by any change in the interest, title, or possession of the property, nor by any increase of hazard." None of the acts mentioned would invalidate the policy as against the mortgagee. It is only the noncompliance of the mortgagee with the terms of the

contract which renders the policy voidable as to him. The failure on the part of the mortgagor or owner to pay the premium does not avoid the policy, for under the terms of the mortgage clause, "in case the mortgagor or owner shall neglect to pay any premium . . . the mortgagee . . . shall, on demand, pay the same," and in the instant case the premiums having been paid by the Baker Insurance Agency there was no breach of contract by any one that would avoid the policies. They were in full force and effect and the insurance company was liable at all times during the life of the policies to the mortgagee for any loss.

In the case of Boston Safe Deposit & T. Co. v. Thomas, 59 Kan. 470, 53 P. 472, the standard mortgage clause is practically the same as in the instant case and in the Upton case. The Kansas case follows the Upton case, holding that the language in the mortgage clause, namely, "provided, that in case the grantor, or owner, neglects or refuses to pay any premium due under this policy, then on demand the beneficiary shall pay the same," is a covenant and not a condition and that on the failure of the mortgagor to pay the premiums the mortgagee on demand is liable therefor. In the Kansas case Thomas, the insurance agent, like the plaintiff in the instant case, brought action to recover the premiums on the policies which were procured and paid for by Thomas, and on the question of the right of the insurance agent to recover the premiums paid by such agent the court said, "The principal contention, however, is as to whether Thomas is entitled to be subrogated to the rights of the insurance company under the mortgage clauses attached to the policies. We hold that these clauses bind the beneficiaries to pay the premiums in case of the failure of Throop (mortgagor) to do so. The companies, however, cannot maintain any action, because they have already received their money. It does not seem to be seriously contended that there was any legal obstacle in Thomas' way in obtaining judgment against Throop for the premiums. He makes no complaint in this court of the judgment entered against him. If an action may be maintained by Thomas against Throop, the principal debtor, and if the beneficiary is liable for the premium in case of Throop's default, why may not Thomas also maintain his action against the beneficiary? If he is subrogated to the rights of the various companies as against the principal, why is he not also as against the surety? Subrogation is a creature of equity, invented to

prevent a failure of justice. . . . Johnson v. Barrett, 117 Ind. 551, 19 N. E. 199, 10 Am. St. Rep. 83; Mosier's Appeal, 56 Pa. 76, 93 Am. Dec. 783. . . . Under the facts disclosed in this case it would certainly be a great misuse of terms to call Thomas an intermeddler. He was really the visible party with whom both Throop and Ball dealt for the insurance. He provided a large number of policies. . . . The companies issuing the policies looked to Thomas only for the premiums. Ball called on him, and him alone, for the renewals. He was interested both in controlling the line of insurance on the hotel for the purpose of obtaining his commissions, and in maintaining his standing with the companies he represented. In order to accomplish the first, he had to keep the full amount of policies in force; and for the latter, it was necessary that the premiums be promptly remitted. He was in no sense a volunteer or intermeddler. The doctrine of subrogation, being entirely independent of any contractual relation, may properly be invoked in a case like this; for certainly in equity and good conscience the right of Thomas to recover, from the holders of the notes secured by this trust deed, the premiums on the policies of insurance of which they had the full benefit, is as clear and as apparent as that of the companies would be if they had not received their pay and were prosecuting separate actions to recover it. The defendants have been protected from loss of their security by the policies paid for with Thomas' money and received by them at his hands. In equity and good conscience he should be permitted to enforce the liability imposed by the mortgage clause." We have quoted at length from this opinion as the facts in the Kansas case and the instance case are identical and the same part of the mortgage clause is involved. See also Provident Sav. Life Assur. Soc. v. Georgia Industrial Co. 124 Ga. 399, 52 S. E. 289.

In the case of Ormsby v. Phenix Ins. Co. 5 S. D. 72, 58 N. W. 301, the mortgage clause is not materially different from the mortgage clause in the instant case, but in the South Dakota case a second mortgage was given on the property. The first mortgage was foreclosed, there was a change of ownership and possession of the mortgaged property, and the mortgagee, who had not complied with the mortgage clause which required the mortgagee to notify the insurance company of the foreclosure proceedings or of any change of resi-

dence or of occupancy or increase of hazard or offering to pay on demand any premium for increased hazard, brought an action against the insurance company on the policy for a loss and the court held that he could not recover for the reason that he failed to comply with the mortgage clause.

"Frequently protection is extended to the mortgagee so far as to prevent the invalidating of the policy by any act of the mortgagor or owner of the property insured." 1 Jones, Mortg. 567 and 568, §§ 406 and 406a. The mortgagee can only be defeated by his own acts and he could not recover in the South Dakota case because of his failure to comply with the mortgage clause. In the instant case it is not the mortgagee suing to recover for a loss, but the mortgagee is the defendant in an action brought against him for its failure to pay insurance premiums of which it had the benefit.

"The effect of such a policy (said Chief Justice Field) is the same as if the mortgagor had taken out the insurance in his own name, and then assigned it to the mortgagee to the extent of his interest, and the insurance company had assented to the assignment and had promised the mortgagee that no act or default of the mortgagor should defeat the right of the mortgagee to recover to the extent of his interest." 1 Jones, Mortg. 576 and many cases cited. Oakland Home F. Ins. Co. v. Bank of Commerce, 47 Neb. 717, 66 N. W. 646, 36 L.R.A. 673, 58 Am. St. Rep. 663, note 667; Queen Ins. Co. v. Dearborn Sav. Loan & Bldg. Asso. 175 Ill. 115, 51 N. E. 717; Magoun v. Fireman's Fund Ins. Co. 86 Minn. 486, 91 N. W. 5, 91 Am. St. Rep. 370; Bacot v. Phœnix Ins. Co. 96 Miss. 223, 50 So. 729, 25 L.R.A.(N.S.) 1226, Ann. Cas. 1912B, 262.

In the case of Syndicate Ins. Co. v. Bohn (C. C. A. 8th) 65 F. 165, Judge Sanborn speaking for the court said: "The effect of the 'union mortgage clause,' providing, among other things, that the insurance, as to the interest of the mortgagee, shall not be invalidated by any act or neglect of the mortgagor, nor by any change in title or possession, provided the mortgagee shall notify the company of any change coming to the mortgagee's knowledge, and that when the company shall pay the mortgagee for a loss, and the claim that no liability existed as to the mortgagor, it shall be subrogated to all rights of the mortgagee under securities held, when such clause is attached

to an existing policy of insurance running to the mortgagor, is to make a new and separate contract between the mortgagee and the insurance company, and to effect a separate insurance of the interest of the mortgagee, dependent for its validity solely upon the course of action of the insurance company and the mortgagee, and unaffected by any act or neglect of the mortgagor, of which the mortgagee is ignorant, whether such act or neglect was done or permitted prior or subsequent to the issue of the mortgage clause."

In the case of Stoddart v. Black, 134 Kan. 838, 8 P. (2d) 305, the supreme court of. Kansas again reviews the authorities at great length and in a very vigorous opinion sustains its former decision. The court said: "It is true, that, beginning with the decision of a divided court . . . in Coykendall v. Blackmer, 161 App. Div. 11, 146 N. Y. S. 631, holding that the words express a condition, several other courts have reached the same conclusion. Home Ins. Co. v. Union Trust Co. 40 R. I. 367, 100 Atl. 1010, L.R.A.1917F, 375; Schmitt v. Gripton, 77 Cal. App. 429, 247 P. 505; Farnsworth v. Riverton Wyoming Ref. Co. 35 Wyo. 334, 249 P. 555, 47 A.L.R. 1114; Whitehead v. Wilson Knitting Mills, 194 N. C. 281, 139 S. E. 456, 56 A.L.R. 674; John N. Acuff Co. v. Bankers T. Co. 157 Tenn. 99, 7 S. W. (2d) 52; Olmstead v. Metropolitan L. Ins. Co. 118 Ohio St. 421, 161 N. E. 276. These decisions proceed, primarily, upon the theory that the word 'provided' at the beginning of the sentence characterized the entire sentence as being a condition. In Johnson, S. & Co. v. Ft. Worth State Bank (Tex. Civ. App.) 244 S. W. 657, 661, a majority of the court declined to take that view. While it is true that the word 'provided' is an appropriate word to introduce a condition, and ordinarily is so used, such is not the only use of the word. It may be used to express a covenant. Lyon v. Hersey, 103 N. Y. 264, 8 N. E. 518; Heaston v. Randolph County, 20 Ind. 398, 403; Hartung v. Witte, 59 Wis. 285, 18 N. W. 175; Stanley v. Colt, 5 Wall. 119, 18 L. ed. 502; Woodruff v. Woodruff, 44 N. J. Eq. 349, 16 Atl. 4, 1 L.R.A. 380; Rich v. Atwater, 16 Conn. 409, 419; Chapin v. Harris, 8 Allen, 594; MacKenzie v. Presbytery of Jersey City, 67 N. J. Eq. 652, 61 Atl. 1027, 3 L.R.A. (N.S.) 227. It is sometimes used as 'with the understanding,' Nusly v. Curtis, 36 Colo. 464, 85 P. 846, 7 L.R.A.(N.S.) 592, 118 Am. St. Rep. 113, 10 Ann. Cas. 1134, or 'with the stipulation.' Southern

Colonization Co. v. Derfler, 73 Fla. 924, 75 So. 790, L.R.A.1917F, 744." Continuing, the court quotes from Trust Co. v. Phœnix Ins. Co. 201 Mo. App. 223, at page 237, 210 S. W. 98, as follows: "We feel safe in holding that the word 'provided' ordinarily indicates that a condition follows, but that 'there is no magic in the term,' but the clause in a contract or written instrument following the word 'provided' is to be construed from the words employed and from the purposes of the parties gathered from the whole instrument.'" Citing the Kansas case. The court then cites the case of Security Ins. Co. v. Eakin, 41 Ga. App. 257, 152 S. E. 606, and quote "Where there is embraced in a fire insurance policy what is known as a 'New York standard mortgagee clause,' and in connection therewith and as a part thereof the following: 'That in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same,' and where the mortgagee has knowledge of this provision in the policy, or knowingly accepts benefits therefrom, it amounts to a contract on his part to pay the premium due on the policy if the owner fails to pay." The Georgia court quotes at length from the Upton Case and very liberally from the Kansas case and the only other case cited is the case of Muddle v. Van Slyke, 63 Misc. 229, 118 N. Y. S. 473. In this latter case the mortgagor, Lebenheim, obtained from various fire insurance agents, including the plaintiff, policies of insurance on the property, aggregating $17,000. The premiums were charged by the insurance companies against the insurance agent and were, in effect, paid by the settlement of their respective accounts. Each agent took and received from the mortgagor, Lebenheim, his promissory note for the premiums on the policies issued through each; the said notes extending the time for payment of the premiums. After the policies expired and Lebenheim had defaulted of payment of the notes, the agents applied to the respective insurance companies and received from them, respectively, an assignment of accounts against Lebenheim and Van Slyke. Subsequently the plaintiffs took an assignment from each of the other agents and brought action against the mortgagee to recover from him the said premiums. As a defense, the mortgagee claimed (1) that he was not a party to the contracts of insurance and is not bound by the clause above stated. (2) That when the agent paid the premiums to the in-

surance companies, all rights of such companies expired, and there was nothing to pass under the assignments. (3) If the clause is binding upon the defendant, he stands as a guarantor, and the taking of the notes, extending the time of payment, relieved him from all liability. The court said: "The 'standard mortgagee clause,' of which the provision above quoted forms a part, constitutes no part of the standard policy, as prescribed by the state. That act . . . provides for a uniform policy of insurance, but does not include the provisions found in the aforesaid standard mortgagee clause. It does not, in the instances in question, form any integral part of the policies. . . . I speak of this for the reason that this method of employing the clause indicates that it does not belong to policies in general, but only in special instances and under peculiar circumstances. The mere knowledge that a policy has been issued does not carry with it notice that this special provision has been attached to the same. It appears without dispute that the defendant never saw or had possession of any of the policies, and had no knowledge that the policies contained any provision that he was to pay the premiums, if not paid by the mortgagor or owner. It must be true that, in order to bind a mortgagee to pay such premiums, the clause to that effect must be brought home to him, and his agreement to pay accomplished, either by express agreement or by implication. Northern Assur. Co. v. Goelet, 31 Misc. 361, 65 N. Y. S. 403, affirmed in 69 App. Div. 108, 74 N. Y. S. 553."

In the instant case the mortgage requires the mortgagor to insure the property in companies approved by the mortgagee and the record shows that the policies, with the mortgage clause attached, were delivered to the mortgagee when issued and in possession of the mortgagee at all times, so that under the New York decision the mortgagee would be bound because the mortgage clause was brought home to him by the delivery of the policies in compliance with his mortgage contract with the mortgagor.

In the case of Radil v. Morris & Co. 103 Neb. 84, 170 N. W. 363, 7 A.L.R. 539, 18 N. C. C. A. 380, it is held that "the general purpose of a proviso in a statute is to qualify the statute in part or in whole, but it is not always so used. The word 'provided,' as it is first used in § 3661, Rev. Stat. 1913, as amended by Laws 1917, chap. 85, § 6, has

the same meaning that the conjunction 'and' or 'but' would have, if used in its place."

"Words of proviso and condition will be construed into words of covenant, when such is the apparent intention and meaning of the parties." 2 Parson, Contr. 9th ed. page 667 and note F; Clapham v. Moyle, 1 Lev. 155, 83 Eng. Reprint, 345, 1 Keble, 842, 83 Eng. Reprint, 1275; Shep. Touch. 122; Huff v. Nickerson, 27 Me. 106; Paschall v. Passmore, 15 Pa. 295, 307.

Under § 5896, Compiled Laws 1913, a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful. Under § 5898 the language of the contract is to govern its interpretation, if the language is clear and explicit and does not involve an absurdity, and under § 5901, the whole of a contract is to be taken together so as to give effect to every part, if reasonably practical, each part helping to interpret the others.

The many decisions cited and relied on by appellant are based, not upon the whole contract, but upon the one word "provided" which introduces the sentence involving the mortgagee's liability. Under these decisions the mortgage clause is binding on the insurance company and on the mortgagor, but the mortgagee is not bound. As to the mortgagee, it is merely an option which he may or may not take advantage of as he chooses. The language "provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same," is clear mandatory language. Corliss, Ch. J., said in the Upton Case, 2 N. D. 229, 50 N. W. 702, supra, "But the clause, as it does read, is an absolute engagement to pay the money on the default of the mortgagor." That has been the law in this state for more than forty years and if a change is desirable at this late date, the appeal should be made to the legislature and not the courts.

In Stoddart v. Black, 134 Kan. 838, 8 P. (2d) 305, supra, the question of the right of the insurance agent to recover the premiums was also involved and the Kansas court said: "That agents may be so subrogated was ruled in Safe Deposit Co. v. Thomas, supra. There was evidence in this case that plaintiffs, in the due course of business, as was their custom, paid the premiums to the insurance companies.

We think that, and other evidence previously stated herein, sufficient on this point."

In the instant case the insurance companies required the Baker Insurance Agency to pay the premiums and said agency is subrogated to the rights of the insurance companies to collect the premiums. There is no merit to the claim that the plaintiff is not entitled to collect its commissions. The commissions are a part of the premiums for which the mortgagee is liable. The cases which hold that the insurance agent, who procured the policies, cannot recover for the premiums paid are cases which hold that the mortgagee is not liable at all and therefore are not in point.

The judgment is affirmed with costs.

BURR, Ch. J., and NUESSLE and CHRISTIANSON, JJ., concur.

MOELLRING, J., did not participate.

BURKE, J. Appellant, in a petition for rehearing, states that the court did not pass upon the question of laches of the plaintiff in making demand upon the defendant for the insurance premiums. "The first premium became due February 18, 1927, the second April 20, 1928, and so on. The last one being payable February 28, 1930, and no demand was made upon the defendant until November 28, 1932."

There is nothing in the record to show that the defendant was in any way prejudiced by the failure of the plaintiff to make demand. The question of laches was not raised or decided by the trial judge. The trial judge, in his memorandum opinion, says: "Three propositions of law are involved, (1) is the mortgagee under the standard mortgage clause liable for the premiums thereon upon the neglect or refusal of the mortgagor to pay the premiums? (2) If the mortgagee is liable, is the plaintiff in this case subrogated to the rights of the insurer? (3) If the mortgagee is liable and if the plaintiff is subrogated to all the rights of the insurer, is the mortgagee liable for the full premium or for the net amount only remitted by the Baker Insurance Agency to the company?" He then proceeds to decide each question in favor of the respondent.

It is true, as counsel says, that subrogation is governed by equitable

principles and that laches may defeat a recovery. The rule as stated in 60 C. J. 829, § 133, is as follows: "The right of subrogation is one of equity merely, and due diligence must be exercised in ascertaining it. Laches in taking advantage of the right will forfeit it as against the rights of third persons which have intervened, and subrogation is not allowed in favor of one who has permitted the equity he asserts to sleep in secrecy until the rights of others would be injuriously affected by its assertion and enforcement. . . . However, lapse of time alone is not generally sufficient to sustain the defense of laches. Delay that works a disadvantage is necessary and laches will not defeat subrogation where it would be inequitable to deny it. It is only where injustice will be done that the court declines to interfere on the ground of laches, so that mere delay will not bar the right to subrogation if the position of the party against whom subrogation is claimed has not been altered to its disadvantage; and where the rights of third persons have not intervened, it has been held that a delay, short of the statutory period of limitations, will not bar a party of his right to be subrogated to the rights of another. If there is no such obscurity in the transaction and no such loss of evidence as would be likely to produce injustice, there is no laches defeating the right to subrogation." The text, as quoted, is supported by an abundance of authorities and there is nothing in the North Dakota cases cited in appellant's brief contrary.

"In order to bar a remedy because of laches, there must appear, in addition to mere lapse of time, some circumstances from which the defendant or some other person may be prejudiced, or there must be such lapse of time that it may be reasonably supposed that such prejudice will occur if the remedy is allowed. In the absence of any such showing an equitable action is not barred by any lapse of time short of that fixed by the analogous statute of limitations." 1 Bancroft, Code Pl. 473, § 315 and cases cited. As already stated, there is nothing in this record to show any prejudice to the defendant on account of the failure of the respondent to demand payment for the premiums and the petition for rehearing is denied.

BURR, Ch. J., and NUESSLE and CHRISTIANSON, JJ., concur.